**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**BEAUMONT DIVISION**

| | | |
|---|---|---|
| STATE OF TEXAS, | § | |
| Plaintiff | § | |
| | § | |
| vs. | § | |
| | § | |
| BP EXPLORATION & PRODUCTION | § | Civil Action No. _____ |
| INC.; BP AMERICA PRODUCTION | § | |
| COMPANY; BP p.l.c.; TRANSOCEAN | § | |
| LTD.; TRANSOCEAN OFFSHORE | § | |
| DEEPWATER DRILLING, INC.; | § | |
| TRANSOCEAN DEEPWATER, INC.; | § | |
| TRANSOCEAN HOLDINGS, LLC; | § | |
| TRITON ASSET LEASING GmbH; | § | |
| HALLIBURTON ENERGY SERVICES, | § | |
| INC.; HALLIBURTON DIVISION | § | |
| SPERRY DRILLING SERVICES; | § | |
| ANADARKO PETROLEUM | § | |
| CORPORATION CO.; and ANADARKO | § | |
| E&P COMPANY LP; | § | JURY DEMANDED |
| Defendants. | § | |

**COMPLAINT**

# CONTENTS

I.    NATURE OF THE ACTION.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   PARTIES, JURISDICTION AND VENUE. . . . . . . . . . . . . . . . . . . . . . . . . 2
      A.   Plaintiff. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
      B.   Defendants. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
      C.   Jurisdiction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
      D.   Venue. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

III.  GENERAL ALLEGATIONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
      A.   Legal Basis. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
      B.   Factual Background. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
           Injury to Natural Resources. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
           Use of Dispersants. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
           Tax Revenue.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
           State Park Revenue. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
      C.   Conditions Precedent. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

IV.   FIRST CLAIM FOR RELIEF – Declaratory Judgment for Liability under
      OPA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

V.    SECOND CLAIM FOR RELIEF – Damages under OPA. . . . . . . . . . . . . 25
           Natural Resources. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
           Tax Revenues.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
           State Park Revenues. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

VI.   THIRD CLAIM FOR RELIEF – Natural Resource Damages under § 107
      of CERCLA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

VII.  FOURTH CLAIM FOR RELIEF – Declaratory Judgment under § 113 of
      CERCLA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

VIII. FIFTH CLAIM FOR RELIEF – Economic and Natural Resource
      Damages under OSPRA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

IX.   SIXTH CLAIM FOR RELIEF – Cost Recovery under the Texas Water
      Code. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

X.     SEVENTH CLAIM FOR RELIEF – Civil Penalties under OSPRA. . . . . . 37

XI.    EIGHTH CLAIM FOR RELIEF – Civil Penalties under the Texas Water
       Code. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

XII.   Attorneys' Fees and Costs. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

XIII.  Pre-judgment and Post-judgment Interest. . . . . . . . . . . . . . . . . . . . . . . 41

PRAYER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

## COMPLAINT

Plaintiff, the State of Texas, by and through Greg Abbott, Attorney General of

Texas, on behalf of the People of Texas, alleges on information and belief as follows:

## I.  NATURE OF THE ACTION

1.     This is a case in which the Defendants engaged in willful and wanton

misconduct and caused the worst environmental disaster in the history of the United

States.

2.     This action arises from the oil spill into the Gulf of Mexico that began on or

about April 20, 2010, when explosions and fires destroyed the Mobile Offshore Drilling

Unit ("MODU") *Deepwater Horizon* at the site of the Macondo Well, approximately 50

miles from the Mississippi River delta. Eleven people aboard the rig lost their lives;

many other men and women were injured. Oil from the *Deepwater Horizon* and its

appurtenances and/or the Macondo Well flowed into the Gulf of Mexico unchecked for

months.

3.     Between approximately April 20, 2010, and the date the Macondo Well was

capped, hundreds of millions of gallons of oil were discharged from the *Deepwater*

*Horizon* and its appurtenances and/or the Macondo Well into the Gulf of Mexico,

including the territorial waters of Texas, and upon Texas shorelines.

4.     In addition, the Defendants used chemical dispersants to accelerate the

1

dispersal of the oil. These dispersants tend to bio-accumulate in the tissue of fish and

other organisms and have potentially significant side-effects in the marine ecosystem.

5.     The entire incident, including the explosions, fires, oil spill, oil discharge into

state waters and upon state beaches, spread of dispersant, and all the resulting damage

and injury is referred to hereinafter as the "Deepwater Horizon Incident."

6.     This action is brought under Fed. R. Civ. P. 11 under existing law or as a non-

frivolous argument for modifying or reversing existing law, in that state law claims in a

related action have been held to be preempted by federal law.[1]

7.     The State, by and through its Attorney General, brings this enforcement

action for economic damages, natural resource damages, declaratory judgment,

penalties and costs, to the fullest extent allowed by the law.

## II.  PARTIES, JURISDICTION AND VENUE

### A.  Plaintiff

8.     Plaintiff is the State of Texas ("Texas" or the "State"), acting on behalf of the

People of Texas and the following state agencies:

a.     The Texas Commission on Environmental Quality ("TCEQ"), with

respect to violations of the Texas Water Code and equivalent federal laws;

---

[1] See, e.g., Order and Reasons, *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010,* MDL No. 2179, 2011 WL 5520295 at *3-14 (E.D. La. Nov. 14, 2011). This and related issues are currently on appeal. *In re: DEEPWATER HORIZON,* No. 12-30012, (5th. Cir. filed Dec. 22, 2011).

b.     The Texas General Land Office ("TGLO"), with respect to violations of

the Texas Natural Resources Code and claims for economic damages under OPA;

c.     The Texas Parks and Wildlife Department ("TPWD"), with respect to

claims for economic damages under OPA; and

d.     The Texas Natural Resource Damage Trustees ("the Texas NRD Trust-

ees") – consisting of the TPWD, the TGLO and the TCEQ – with respect to claims

for damages for injury to natural resources, including the cost of assessment,

under both state and federal law.

## B.  Defendants

9.     Defendant BP Exploration & Production Inc. ("BP Exploration") is a Delaware

corporation with its principal place of business in Warrenville, Illinois. BP Exploration

was a lease holder and the designated operator in the lease granted by the former

Minerals Management Service[2] ("MMS") allowing it to perform oil exploration, drilling,

and production-related operations in Mississippi Canyon Block 252, the location known

as "Macondo" where the Spill originated. BP Exploration was designated as a "Respon-

sible Party" by the U.S. Coast Guard under the Oil Pollution Act of 1990, 33 U.S.C. §

---

[2]  The MMS, a federal entity, divides the Gulf of Mexico's seafloor into rectangular
"blocks" and then auctions the rights to drill for oil and gas beneath those blocks of sea floor.
The MMS was reorganized as the Bureau of Ocean Energy Management, Regulation, and
Enforcement ("BOEMRE") on June 18, 2010. It shall, however, be referred to as the MMS
throughout this Complaint.

3

2714. BP Exploration is registered to do business, and does business, in Texas. BP Exploration may be served with process by serving its registered agent, C.T. Corporation System, at 350 N. St. Paul Street, Suite 2900, Dallas, Texas 75201-4234.

10.    Defendant BP America Production Company ("BP America") is a Delaware corporation with its principal place of business in Houston, Texas. BP America was the party to the Drilling Contract with Transocean Ltd. for the drilling of the Macondo well by the *Deepwater Horizon* vessel. BP America is registered to do business, and does business, in Texas. BP America may be served with process by serving its registered agent, C.T. Corporation System, at 350 N. St. Paul Street, Suite 2900, Dallas, Texas 75201-4234.

11.    Defendant BP p.l.c. is a British public limited company with its corporate headquarters in London, England. BP p.l.c. is the global parent company of the worldwide business operating under the "BP" logo. Defendants BP Exploration and BP America are wholly-owned subsidiaries of BP p.l.c. and are sufficiently controlled by BP p.l.c. so as to be BP p.l.c.'s agents in Texas. BP p.l.c. does business in Texas. BP p.l.c. has accepted service of the Master Complaints filed in MDL 2179 and has acknowledged that it is subject to jurisdiction in the United States. BP p.l.c. may be served with process by serving its registered agent, C.T. Corporation System, at 350 N. St. Paul Street, Suite 2900, Dallas, Texas 75201-4234.

12.   BP Exploration, BP America, and BP p.l.c. are generally referred to herein collectively as "BP." As lease operator of the Macondo prospect site, BP was responsible for assessing the geology of the prospect site, engineering the well design, obtaining regulatory approvals for well operations, and retaining and overseeing the contractors working on the various aspects of the well and the drilling operations.

13.   Defendant Transocean Ltd. ("Transocean Ltd.") is a Swiss corporation that maintains substantial U.S. offices in Houston, Texas, and at all pertinent times was doing business in the State of Texas. Transocean Ltd. was an owner, managing owner, owner pro hac vice, and/or operator of the MODU *Deepwater Horizon*. Transocean Ltd. may be served with process through Steven L. Newman, President and Chief Executive Officer, or Allen M. Katz, Interim Senior Vice President and General Counsel, at 4 Greenway Plaza, Houston, Texas 77046-0400.

14.   Defendant Transocean Offshore Deepwater Drilling, Inc. ("Transocean Offshore") is a Delaware corporation with its principal place of business in Houston, Texas, and at all pertinent times was doing business in the State of Texas. Transocean Offshore is affiliated with Transocean Ltd. and was an owner, managing owner, owner pro hac vice, and/or operator of the MODU *Deepwater Horizon*. Transocean Offshore may be served with process by serving its registered agent, Capitol Corporate Services, Inc., at 800 Brazos St., Suite 400, Austin, Texas 78701-2548.

15.    Defendant Transocean Deepwater, Inc. ("Transocean Deepwater") is a

Delaware corporation with its principal place of business in Houston, Texas, and at all

pertinent times was doing business in the State of Texas. Transocean Deepwater is

affiliated with Transocean Ltd. and was an owner, managing owner, owner pro hac

vice, and/or operator of the MODU *Deepwater Horizon*. Transocean Deepwater may be

served with process by serving its registered agent, Capitol Services, Inc., at 1675 State

Street, Suite B, Dover, Delaware 19901-5140, or through Steven L. Newman, President

and Chief Executive Officer, or Allen M. Katz, Interim Senior Vice President and

General Counsel, at 4 Greenway Plaza, Houston, Texas 77046-0400.

16.    Defendant Transocean Holdings, LLC ("Transocean Holdings") is a Delaware

limited liability company with its principal place of business in Houston, Texas, and at

all pertinent times was doing business in the State of Texas. Transocean Holdings is

affiliated with Transocean Ltd. and is a wholly-owned subsidiary of Transocean

Offshore. Transocean Holdings was an owner, managing owner, owner pro hac vice,

and/or operator of the *Deepwater Horizon* and participated in the *Deepwater Horizon's*

offshore oil drilling operations at the Macondo prospect where the Spill originated.

Transocean Holdings is party to the contract with BP regarding the lease of the *Deep-

water Horizon* for drilling operations in the Gulf of Mexico. On April 28, 2010, the U.S.

Coast Guard named Transocean Holdings as a "Responsible Party" under the Oil

Pollution Act for the surface oil spill resulting from the blowout by the *Deepwater Horizon*. Transocean Holdings may be served with process by serving its registered agent, Capitol Services, Inc., 1675 State Street, Suite B, Dover, Delaware 19901-5140 or through Steven L. Newman, President and Chief Executive Officer, or Allen M. Katz, Interim Senior Vice President and General Counsel, at 4 Greenway Plaza, Houston, Texas 77046-0400.

17.    Defendant Triton Asset Leasing GmbH ("Triton") is a Swiss limited liability company with its principal place of business in Zug, Switzerland. Triton is affiliated with Transocean Ltd. and was an owner, managing owner, owner pro hac vice, and/or operator of the *Deepwater Horizon*. Service on Triton may be accomplished by personal service at its principal place of business, Turmstrasse 30, CH-6300, Zug, Switzerland, c/o Transocean Deepwater Drilling, Inc., 4 Greenway Plaza, Houston, Texas, 77046; and/or pursuant to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, to which the Swiss Confederation is a signatory.

18.    Defendants Transocean Ltd., Transocean Deepwater, Transocean Offshore, Transocean Holdings, and Triton are hereinafter referred to collectively as "Transocean." At the Macondo site, Transocean provided the *Deepwater Horizon* vessel and personnel to operate it. At all times relevant to the Spill, Transocean, subject to BP's

inspection and approval, was responsible for maintaining well control equipment, such as the blowout preventer and its control systems. Transocean also provided operational support for drilling-related activities on board the *Deepwater Horizon,* as well as onshore supervision and support for those drilling activities at all times relevant to the Spill.

19.    Defendant Halliburton Energy Services, Inc. ("Halliburton") is a Delaware corporation with its principal place of business in Houston, Texas. Halliburton does business in the State of Texas. Halliburton provided engineering services, materials, testing, mixing, and pumping for cementing operations on board the *Deepwater Horizon,* as well as onshore engineering support for those operations. Halliburton was responsible for the provision of technical advice about the design, modeling, placement, and testing of the cement that was used in the Macondo well. At and before the time of the blowout, Halliburton was engaged in cementing operations to isolate the hydrocarbon reservoirs and seal the bottom of the well against the influx of hydrocarbons like gas and oil. Halliburton may be served with process by serving its registered agent, C.T. Corporation System, at 350 N. St. Paul Street, Suite 2900, Dallas, Texas 75201-4234.

20.    Halliburton division Sperry Drilling Services ("Sperry") (formerly Sperry Sun Drilling Services) was responsible for mudlogging personnel and equipment on the *Deepwater Horizon,* including downhole drilling tools. Sperry mudlogging personnel were partially responsible for monitoring the well, including mud pit fluid levels, mud

flow in and out of the well, mud gas levels, and pressure fluctuations. Throughout this

Complaint, "Halliburton" shall refer to both Halliburton Energy Services, Inc., and its

Sperry division. Sperry may be served by serving Sperry Drilling Services, c/o Hallibur-

ton Energy Services, Inc., by serving its registered agent, C.T. Corporation System, at

350 N. St. Paul Street, Suite 2900, Dallas, Texas 75201-4234.

21.   BP, Transocean and Halliburton are collectively referred to herein as the

"Drilling Defendants," as they were all involved in the drilling, cementing, and/or other

temporary well abandonment activities of the *Deepwater Horizon*, and thus their actions

caused and/or contributed to the Spill.

22.   Defendant Anadarko Petroleum Corporation Co. ("Anadarko") is a Delaware

corporation with its principal place of business in The Woodlands, Texas. Anadarko

does business in the State of Texas. Anadarko is an oil and gas exploration and produc-

tion company. Anadarko may be served with process by serving its registered agent,

C.T. Corporation System, at 350 N. St. Paul Street, Suite 2900, Dallas, Texas 75201-4234.

23.   Defendant Anadarko E&P Company LP ("Anadarko E&P") is a Delaware

limited partnership with its principal place of business in The Woodlands, Texas.

Anadarko E&P is an oil and gas exploration and production company doing business in

the State of Texas. Anadarko E&P may be served with process by serving its registered

agent, C.T. Corporation System, at 350 N. St. Paul Street, Suite 2900, Dallas, Texas

9

75201-4234.

24.    While BP was the sole lease operator of the *Deepwater Horizon*, Anadarko and

Anadarko E&P were considered non-operational leaseholders. The other non-opera-

tional leaseholders were MOEX Offshore 2007 LLC, MOEX USA Corporation, and

Mitsui Oil Exploration Co., Ltd. (referred to collectively herein as "MOEX").[3] On

October 1, 2009, BP Exploration, as operator, and MOEX Offshore, as non-operator,

entered into the Macondo Prospect Offshore Deepwater Operating Agreement. On

December 17, 2009, BP Exploration, MOEX Offshore, Anadarko E&P, and Anadarko

executed a "Joinder" of the Operating Agreement. Subsequently, the parties to the

Operating Agreement held the following ownership percentages in the Macondo

Prospect: BP Exploration, 65%; MOEX Offshore, 10%; Anadarko E&P, 22.5%; and

Anadarko, 2.5%. According to the MMS's website, effective April 1, 2010, record title

interest in the Macondo prospect was held as follows: BP Exploration, 65%; MOEX

Offshore, 10%; and Anadarko, 25%. As joint holders of a leasehold interest in an oil or

gas lease on land beneath navigable waters, Defendants Anadarko and Anadarko E&P

are jointly, severally and solidarily liable with their codefendants BP pursuant to the Oil

Pollution Act. Anadarko and Anadarko E&P also had access to Halliburton/Sperry Sun

---

[3]  The State of Texas has previously settled related claims with MOEX. *See* Agreed Final J., *State of Texas v. MOEX Offshore 2007 LLC*, No. D-l-GV-12-000181 (353rd Dist. Ct., Travis County, Tex. June 21, 2012).

INSITE realtime data that was transmitted from the *Deepwater Horizon* on April 20, 2010, and therefore knew or should have known of the "red flags" indicating a leak in the well in sufficient time to avert the disaster.

25.   Drilling Defendants, Anadarko and Anadarko E&P are jointly, severally and solidarily liable under the Oil Pollution Act and various principles of federal, maritime and applicable State law.

## C.  Jurisdiction

26.   This Court has jurisdiction over this lawsuit under 28 U.S.C. § 1331 because the suit arises under the Oil Pollution Act, 33 U.S.C. §§ 2701 *et seq.* ("OPA"); the Clean Water Act, 33 U.S.C. §§ 1251 *et seq.* ("CWA"); the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.* ("DJA"); and the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601-9675 ("CERCLA").

27.   This Court has supplemental jurisdiction over the state law claims in this action pursuant to 28 U.S.C. § 1367 because those claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the U.S. Constitution.

## D.  Venue

28.   Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this claim, including injury to natural

resources, loss of tax revenue, and loss of state park fees, occurred in this district.

29.   This action involves questions of fact that are common to actions previously transferred to the Eastern District of Louisiana and assigned to the multi-district litigation *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010*, No. 2:10-md-02179 (E.D. La.). The State reserves the right to seek a transfer of any and all issues and claims not resolved in the proceedings before the MDL court back to the Eastern District of Texas for a jury trial.

## III.  GENERAL ALLEGATIONS

### A.  Legal Basis

30.   The State of Texas owns the water and the bed and shores of the Gulf of Mexico within the boundaries provided in section 11.012 of the Texas Natural Resources Code, including all land which is covered by the Gulf of Mexico and the arms of the Gulf of Mexico, either at high or low tide. All the beds and bottoms, and products of the beds and bottoms, of the lagoons, bays, and inlets of this State and of that part of the Gulf of Mexico within the jurisdiction of the State are the property of the State of Texas, as well as all fish and other aquatic animal life contained therein, and all wildlife. TEX. NAT. RES. CODE § 11.012(c), TEX. PARKS & WILD. CODE § 1.011(c). Some beaches on the Gulf of Mexico above the high tide line are owned outright by the State of Texas, while on other such beaches the public has a dominant use easement. TEX. NAT. RES. CODE

§§ 61.001-.026.

31.    "The gulfward boundary of the State of Texas is the boundary determined in

and pursuant to the decision of the United States Supreme Court in Texas v. Louisiana,

426 U.S. 465 (1976)." TEX. NAT. RES. CODE § 11.012(a).  Briefly, the gulfward boundary is

"three marine leagues of submerged land … measured by the historical state bound-

aries 'as they existed' in 1845 when Texas was admitted into the Union." *United States v.*

*Louisiana,* 389 U.S. 155, 161 (1967).  The lateral seaward boundary between Texas and

Louisiana is constructed "by reference to the median line, or equidistant principle."

*Texas v. Louisiana,* 426 U.S. 465, 468 (1976).

32.    The Oil Pollution Act ("OPA") was enacted in 1990 in response to perceived

inadequacies in the law following the *Exxon Valdez* oil spill in Prince William Sound,

Alaska, and three spills within a 24-hour period some months later in the coastal waters

of Rhode Island, the Delaware River and the Houston Ship Channel. *See* S. REP. NO. 101-

94, at 2-3 (1989). The purposes of the Act are to "create a single federal law providing

cleanup authority, penalties, and liability for oil pollution," *id.* at 9, create "a single fund

to pay for the removal of and damages from oil pollution," *id.,* and impose liability "on

the owner or operator of any vessel or onshore or offshore facility discharging oil," *id.* at

12.  Liability would include removal costs, natural resource damages and economic

damages. *Id.*

33.    The Texas Oil Spill Prevention and Response Act of 1991, Tex. Nat. Res. Code ch. 40 ("OSPRA"), is intended to preserve the Texas coast as "a matter of the highest urgency and priority." *Id.* § 40.002(a). The Act finds that "the natural resources of the state and particularly those in the coastal waters of the state offer significant benefits to the citizens of Texas," and declares it to be public policy "to protect these natural resources and to restore, rehabilitate, replace, and/or acquire the equivalent of these natural resources with all deliberate speed when they have been damaged." *Id.* § 40.002(b). The Commissioner of the General Land Office ("GLO") is given the authority under the police power to prevent spills and discharges of oil, provide for response actions, administer a coastal protection fund, and "guarantee the prompt payment of certain reasonable claims" resulting from such spills and discharges. *Id.* § 40.002(c). OSPRA is intended to "support and complement" OPA and other federal law, "specifically those provisions relating to the national contingency plan for cleanup of oil and hazardous substance spills and discharges, including provisions relating to the responsibilities of state agencies designated as natural resources trustees," and to "be interpreted and implemented in a manner consistent with federal law." *Id.* § 40.002(d).

34.    <u>Civil Penalties</u>. Texas law imposes civil penalties, pursuant to Chapter 26 of the Texas Water Code and Chapter 40 of the Texas Natural Resources Code, against those who unlawfully discharge oil into or adjacent to the waters of the state. Polluters

14

are strictly liable under these laws, with penalties based in part on the number of days of discharge and in part on the number of barrels of oil discharged. The State thus seeks in this action the imposition of civil penalties for each day of discharge and for each barrel of oil that was discharged from the *Deepwater Horizon* and its appurtenances and/or the Macondo Well into or adjacent to the waters of the state.

35.   <u>Tax Revenue</u>. Texas imposes a state sales and use tax on the sale or lease of taxable goods and services at the rate of 6.25%. TEX. TAX CODE § 151.051. The state sales and use tax covers a broad spectrum of transactions that occur on a regular basis in establishments across numerous business sectors. Sellers are required to collect the tax on each transaction and remit the tax to Texas on a monthly, quarterly, or yearly basis (based on qualifications). Taxes are due to the state on the twentieth day of the month following the reporting period.

36.   Additionally, Texas imposes a state hotel occupancy tax on a person who pays for a room or space in a hotel costing $15 or more each day at the rate of 6%. TEX. TAX CODE § 156.051-.052. The tax covers hotels, motels and bed and breakfasts, as well as condominiums, apartments and houses rented for less than 30 consecutive days. Persons leasing their houses or rooms in their house must collect hotel occupancy tax from their customers, in the same way a hotel or motel collects the tax from its patrons.

37.   Further, Texas imposes a mixed beverage tax on the amount received from

15

the sale, preparation or service of mixed beverages and from the sale, preparation or

service of ice or nonalcoholic beverages that are sold, prepared or served for the

purpose of being mixed with an alcoholic beverage and consumed on the premises. TEX.

TAX CODE § 183.021. The mixed beverage tax is 14% of gross receipts. *Id.* A portion of

the mixed beverage tax is remitted to the local taxing authority where the seller is

located.

38.    State Park Revenue. TPWD is responsible for the management of state parks

within the State of Texas. TPWD collects entrance fees from visitors to state parks, plus

facility fees, activity fees and concession fees within the parks. Entrance fees to coastal

parks range from three to five dollars per person. Other fees include facility fees for

campsites and building rentals, and activity fees for tours and classes. Concessions,

including snack stands, umbrella rentals and the like, also raise revenue.

**B.  Factual Background**

39.    The Deepwater Horizon Incident has had direct impacts within the State of

Texas including, but not limited to, impacts resulting from the fire, explosion, sinking,

and oil spill associated with the *Deepwater Horizon*, and the subsequent use of dispers-

ants in the water.

40.    Injury to Natural Resources. As a result of the Deepwater Horizon Incident,

"natural resources," as that term is defined in OPA, 33 U.S.C. § 2701(20), under the

trusteeship of the State have been injured, destroyed, or lost. The natural resources have been injured, destroyed, or lost because of the discharged oil and associated removal efforts. The discharged oil is harmful to natural resources exposed to the oil, including aquatic organisms, birds, wildlife, vegetation, and habitats. The discharged oil and some response activities to address the discharges of oil have resulted in injury to, loss of, loss of use of or destruction of natural resources in and around the Gulf of Mexico and along adjoining shorelines of the State, and have impaired or caused the loss of services that those resources provide. The full extent of potential injuries, destruction, loss and loss of services is not yet fully known and may not be fully known for many years, because of ongoing assessment work, including monitoring and long-term study analysis. Additionally, as sunken and dispersed oil resurfaces, additional harm to marine ecosystems will occur and continue.

41.   Resources and resource services that have been injured, destroyed, contaminated or lost include, but are not limited to: coastal habitats; a variety of wildlife including birds, sea turtles, and marine mammals; the State's waters and seabeds, including sargassic and benthic communities, marine organisms, coral, fish, and water-column habitat; and lost human-use opportunities associated with various natural resources in the Gulf region, including fishing, swimming, beach-going, and viewing of birds and wildlife. In particular, many ecologically or commercially valuable

17

species that spend some or all of their life cycles in waters of the State have been and

will continue to be harmed by the Deepwater Horizon Incident, such as waterfowl, the

Kemp's ridley sea turtle, shrimp, crabs, oysters, red snapper, tuna, red drum and

pelagic fish.

42.   <u>Use of Dispersants</u>. The Defendants used chemical dispersants, including

large quantities of Corexit 9500 and lesser amounts of Corexit 9527, to accelerate the

dispersal of the oil. These dispersants have significant side effects to the marine

ecosystem. The Material Safety Data Sheets ("MSDS") for both versions of Corexit show

that they have the potential to bio-accumulate in the tissues of fish or other organisms.

Additionally, the MSDS's state that if the product becomes a waste, "it could meet the

criteria of a hazardous waste as defined by the Resource Conservation and Recovery

Act (RCRA) 40 CFR 261."

43.   These dispersants had the potential to affect, and did affect, marine species

that came into contact with them. These species included migratory species that occupy

Texas waters from time to time. Research is continuing on the long-term effects of the

use of these chemicals on Texas species, and on the Texas coastal ecosystem generally.

44.   <u>Tax Revenue</u>. The State has suffered a loss of tax revenue from reduced

tourism and other economic activity attributable to the Deepwater Horizon Incident.

Revenue from the state sales and use tax, hotel occupancy tax, and mixed beverage tax

was reduced in the months during and after the Deepwater Horizon Incident, due to that incident.

45.    <u>State Park Revenue</u>. TPWD suffered losses in revenue at three coastal state parks due to the Deepwater Horizon Incident. Visitation was reduced at Galveston Island, Mustang Island, and Goose Island state parks in the months during and after the Deepwater Horizon Incident. That in turn led to a loss of revenue from admission fees, facility fees, activity fees and concessions.

46.    Investigation of other potential claims, assessment of damage amounts, and additional removal and remediation actions continue. Therefore, the State of Texas reserves its rights in full to amend this Complaint by, among other things, adding new allegations, new claims, and new defendants.

## C.  Conditions Precedent

47.    <u>The State's claim for economic damages under 33 U.S.C. § 2702</u> was presented to BP, as required by 33 U.S.C. § 2713, as follows:

a.    Various local governmental entities in Texas have made claims for economic damages, and some have brought legal actions for such claims.[4]

b.    The State presented a claim directly to BP's Government Claims web site

---

[4] *See, e.g., City of Galveston, Texas v. BP Exploration & Production Inc.*, No. 3:13-cv-00128 (S.D. Tex. filed Apr. 19, 2013); *The City of Houston, Texas v. BP Exploration & Production Inc.*, No. 4:13-cv-01130 (S.D. Tex. filed Apr. 19, 2013).

and by email on April 19, 2013. The claim was for loss of revenue from various state taxes, i.e.: "To the extent such claims by local governmental entities are approved, based upon their respective tax rates, the State claims a proportional loss of revenue at the state tax rate." The evidence and analysis supporting the State's claim was the same as that supporting the local governments' claims, since the respective taxes were imposed on exactly the same transactions, but at different rates.

      c.     The State presented a claim directly to BP's Government Claims web site and by email on May 16, 2013. The claim was for the loss of state park revenue from admission fees, facility fees, activity fees and concessions.

      48.   <u>The State's claim for natural resource damages under OPA and CERCLA</u> has begun to be presented in a series of work plans, meetings and technical working groups held jointly with the defendants, the United States, and other states. However, the State's claim for natural resource damages under OPA has not been fully assessed. As studies are completed and more data becomes available, this presentment will become more complete.

      49.   <u>The State's claim for natural resource damages under OSPRA</u> is similarly being presented to the Defendants in work plans, meetings and technical working groups. This claim has not yet been fully assessed; therefore the requirements of

presentment, opportunity to make payment within 60 days, and opportunity for

mediation provided in TEX. NAT. RES. CODE § 40.107(c)(7)(F) have not yet been met.

These requirements will be met once the assessment is completed.

50.   All other conditions precedent have occurred or have been performed.

### IV.  FIRST CLAIM FOR RELIEF – Declaratory Judgment for Liability under OPA

(Oil Pollution Act of 1990; 33 U.S.C. §§ 2701-2761)
(Declaratory Judgment Act; 28 U.S.C. §§ 2201-2202)

51.   The allegations in the preceding paragraphs are realleged and incorporated

herein by reference.

52.   The State of Texas is a "State" within the meaning of 33 U.S.C. §§ 2701(36) and

2702(b).

53.   Each Defendant is a "person" within the meaning of 33 U.S.C. §§ 2701(26),

(27) and (32)(A).

54.   The *Deepwater Horizon* was capable of use as an offshore facility (and was not

a self-elevating lift vessel) and was thus a "mobile offshore drilling unit" ("MODU")

within the meaning of 33 U.S.C. § 2701(18).

55.   The MODU *Deepwater Horizon* was a "vessel" within the meaning of 33 U.S.C.

§ 2701(32)(A) and (37).

56.   The Macondo Well, the *Deepwater Horizon* when connected to the Macondo

21

Well, and its appurtenances were a structure, group of structures, equipment or device used for exploring for, drilling for, producing, handling, transferring, or transporting oil, and were therefore a "facility" within the meaning of 33 U.S.C. §§ 2701(9) and 2702(a).

57.   The Macondo Well, the *Deepwater Horizon* when connected to the Macondo Well, and its appurtenances were located in, on or under the navigable waters of the United States, or were a facility subject to the jurisdiction of the United States and located in, on, or under any other waters, and were therefore an "offshore facility" within the meaning of 33 U.S.C. § 2701(22) and (32)(C).

58.   BP held an authorization, license, or permit for geological exploration for the Macondo Well issued under section 11 of the Outer Continental Shelf Lands Act, and was therefore a "permittee" within the meaning of 33 U.S.C. § 2701(28) and (32)(C).

59.   BP held a leasehold interest in an oil or gas lease for the Macondo Well, on lands beneath navigable waters or on submerged lands of the outer Continental Shelf, granted or maintained under the Outer Continental Shelf Lands Act, and was therefore a "lessee" within the meaning of 33 U.S.C. § 2701(16) and (32)(C).

60.   BP was a lessee or permittee of the area in which the facility was located, or the holder of a right of use and easement granted under the Outer Continental Shelf Lands Act for the area in which the facility was located, and is thus a "responsible

22

party" within the meaning of 33 U.S.C. §§ 2701(32)(C) and 2702.

61.   Transocean was an owner of the MODU *Deepwater Horizon* and is thus a

"responsible party" within the meaning of 33 U.S.C. §§ 2701(32)(A) and 2702.

62.   Transocean was a person operating or demise chartering the MODU *Deep-*

*water Horizon* and is thus a "responsible party" within the meaning of 33 U.S.C.

§ 2701(32)(A) and 2702.

63.   Each Drilling Defendant was a person operating the facility and is thus a

"responsible party" within the meaning of 33 U.S.C. § 2701(32)(A) and 2702.

64.   Anadarko and Anadarko E&P held a leasehold interest for the Macondo Well

in an oil or gas lease on lands beneath navigable waters or on submerged lands of the

outer Continental Shelf, granted or maintained under the Outer Continental Shelf

Lands Act, and each was therefore a "lessee" within the meaning of 33 U.S.C. § 2701(16)

and (32)(C).

65.   The Gulf of Mexico at the site of the Macondo Well is within the waters of the

United States, and is thus "navigable waters" within the meaning of 33 U.S.C.

§§ 2701(21) and 2702.

66.   The waters between the Macondo Well and the Gulf Coast of Texas, into

which the oil entered, included the belt of the seas measured from the line of ordinary

low water along that portion of the Texas coast which is in direct contact with the open

sea and the line marking the seaward limit of inland waters, and extending seaward a distance of three miles, and thus was "territorial seas" within the meaning of 33 U.S.C. §§ 2701(35) and 2702.

67.   The Deepwater Horizon Incident involved an emission (other than natural seepage), including (but not limited to) spilling, leaking, pumping, pouring, emitting, emptying, or dumping, and was therefore a "discharge" within the meaning of 33 U.S.C. §§ 2701(7) and 2702.

68.   The oil discharged during the Deepwater Horizon Incident included oil of any kind or in any form, including petroleum, sludge, oil refuse, and oil mixed with wastes other than dredged spoil, and was therefore "oil" within the meaning of 33 U.S.C. § 2701(23).

69.   The oil discharged during the Deepwater Horizon Incident entered Texas waters and washed up on Texas beaches, which were "adjoining shorelines" within the meaning of 33 U.S.C. § 2702.

70.   The Deepwater Horizon Incident was an occurrence or series of occurrences having the same origin, namely the blowout of the Macondo Well, involving one or more vessels, facilities, or combinations thereof, that resulted in the discharge or substantial threat of discharge of oil, and was therefore an "incident" within the meaning of 33 U.S.C. §§ 2701(14) and 2702.

24

71.   This is an actual controversy within the jurisdiction of this Court, within the meaning of 28 U.S.C. § 2201, and accordingly this Court may declare the rights and other legal relations of interested parties.

72.   This is also a claim for damages and removal costs, within the meaning of 33 U.S.C. § 2717(f)(2), and the Court may thus enter a declaratory judgment on liability for removal costs or damages that will be binding on any subsequent action or actions to recover further removal costs or damages.

73.   The State asks for declaratory judgment, binding in this action and any subsequent action for removal costs or damages, that each Defendant is jointly and severally liable to the State, without any limitation, for its removal costs and damages under OPA.

## V.  SECOND CLAIM FOR RELIEF – Damages under OPA

(Oil Pollution Act of 1990; 33 U.S.C. §§ 2701-2761)

74.   The allegations in the preceding paragraphs are realleged and incorporated herein by reference.

75.   The State of Texas has incurred damages due to the Deepwater Horizon Incident, including the costs of assessing the damages, within the meaning of 33 U.S.C. §§ 2701(5) and 2702.

76.   The Defendants are liable to the State of Texas for the damages it incurred as

a result of the Deepwater Horizon Incident, as follows:

      a.    <u>Natural Resources.</u> As a result of the Deepwater Horizon Incident, and

as described in paras. <u>40</u>-<u>41</u>, above, the State has incurred injury to, destruction of,

loss of, and loss of use of, natural resources, within the meaning of 33 U.S.C.

§ 2702(b)(2)(A), and should recover damages for such injury, destruction and

losses, including the reasonable costs of assessing such damages, as allowed by 33

U.S.C. §§ 2702(b)(2)(A) and 2706(a)(2).

      b.    <u>Tax Revenues.</u> As a result of the Deepwater Horizon Incident, and as

described in paras. <u>35</u>-<u>37</u> and <u>44</u>, above, the State has suffered a net loss of taxes

due to the injury, destruction, or loss of real property, personal property, or

natural resources, within the meaning of 33 U.S.C. § 2702(b)(2)(D), and should

recover damages for such lost revenue. These taxes include the state sales tax, the

hotel occupancy tax, and the mixed beverage tax for the period following the spill.

Each loss from each monthly payment constitutes a separate claim.

      c.    <u>State Park Revenues.</u> As a result of the Deepwater Horizon Incident, and

as described in paras. <u>38</u> and <u>45</u>, above, the State has suffered a net loss of fees and

rents in state parks due to the injury, destruction, or loss of real property, personal

property, or natural resources, within the meaning of 33 U.S.C. § 2702(b)(2)(D),

and should recover damages for such lost revenue. Each month's loss of fees and

26

rents constitutes a separate claim.

77.   The State should recover its damages from the Defendants, as allowed by 33 U.S.C. § 2702(a) and 2706(a)(2).

## VI.  THIRD CLAIM FOR RELIEF – Natural Resource Damages under § 107 of CERCLA

(Comprehensive Environmental Response, Compensation, and Liability Act of 1980; 42 U.S.C. §§ 9601-9675)

78.   The allegations in the preceding paragraphs are realleged and incorporated herein by reference.

79.   The State, acting on behalf of the Texas NRD Trustees with respect to its claim for natural resource damages, is a "State" within the meaning of Section 107(a)(4)(A) of CERCLA, 42 U.S.C. § 9607(a)(4)(A).

80.   Each Defendant is a "person" within the meaning of Sections 101(21) and 107(a) of CERCLA, 42 U.S.C. §§ 9601(21) and 9607(a).

81.   The Macondo Well, the *Deepwater Horizon* when connected to the Macondo Well, and its appurtenances constituted a "facility" within the meaning of Sections 101(9) and 107(a) of CERCLA, 42 U.S.C. §§ 9601(9) and 9607(a).

82.   The use of dispersants during the Deepwater Horizon Incident, as set forth in para. 42, above, was a "release" or "threatened release" within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22), of "hazardous substances" within the meaning

27

of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14), into the environment in the Gulf of

Mexico.

83.   The Defendants "owned or operated" the facility at the time of the disposal of

the dispersants, within the meaning of Section 107(2) CERCLA, 42 U.S.C. § 9607(2).

84.   By their use of dispersants during the Deepwater Horizon Incident, the

Defendants arranged for the disposal, or the transport for disposal, of hazardous

substances within the meaning of Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3).

85.   As set forth in para. 43, above, the use of dispersants in the Gulf of Mexico

during the Deepwater Horizon Incident caused injury to, destruction of, or loss of

natural resources for which the Texas NRD Trustees are responsible.

86.   Pursuant to Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3), Defendants

are jointly and severally liable to the State for damages for the injury to, destruction of,

or loss of natural resources, including the reasonable costs of assessing such injury,

destruction, or loss resulting from such release of hazardous substances.

87.   The State asks for judgment against Defendants for its natural resource

damages and assessment costs under CERCLA.

## VII.  FOURTH CLAIM FOR RELIEF – Declaratory Judgment under § 113 of CERCLA

88.   The allegations in the preceding paragraphs are realleged and incorporated

herein by reference.

89.    CERCLA Subsection 113(g)(2), 42 U.S.C. § 9613(g)(2), states that in any action for recovery of costs under CERCLA Section 107, 42 U.S.C. § 9607, "the court shall enter a declaratory judgment on liability for response costs … that will be binding on any subsequent action or actions to recover further response costs."

90.    The State will incur and continue to incur response costs associated with the Deepwater Horizon Incident.

91.    The State asks for entry of a declaratory judgment that each of the Defendants is jointly and severally liable to the State for its response costs incurred in connection with the Deepwater Horizon Incident.

## VIII.  FIFTH CLAIM FOR RELIEF – Economic and Natural Resource Damages under OSPRA

(Oil Spill Prevention and Response Act of 1991; TEX. NAT. RES. CODE § 40.001 *et seq.*)

92.    The allegations in the preceding paragraphs are realleged and incorporated herein by reference.

93.    This action under the Texas Oil Spill Prevention and Response Act is brought by the Attorney General at the direction of the Commissioner of the General Land Office, in conjunction with the Texas NRD Trustees, pursuant to TEX. NAT. RES. CODE § 40.255(b).

94.    The MODU *Deepwater Horizon* was a watercraft or contrivance used or capable of being used as a means of transportation on water, and was thus a "vessel"

29

within the meaning of TEX. NAT. RES. CODE §§ 40.003(20) & (28).

95.    At all material times prior to the Deepwater Horizon Incident, the MODU *Deepwater Horizon* was a "vessel," a "terminal facility" and/or a "facility" capable of being used to drill offshore wells, within the meaning of Chapter 40 of the Texas Natural Resources Code. *See* TEX. NAT. RES. CODE §§ 40.003(23), (28).

96.    At all times material herein, the Macondo Well with its appurtenances was an offshore pipeline, structure, equipment or device used for the purposes of drilling for, pumping, storing, handling, or transferring oil and operating where a discharge of oil could threaten coastal waters, and was therefore a "terminal facility" or "facility" within the meaning of Chapter 40 of the Texas Natural Resources Code. *See* TEX. NAT. RES. CODE § 40.003(20), (23).

97.    The oil released from the *Deepwater Horizon* and its appurtenances and/or the Macondo Well was "crude oil" within the meaning of TEX. NAT. RES. CODE § 40.003(6), and was therefore "oil" within the meaning of TEX. NAT. RES. CODE §§ 40.003(17), (20) & (26) and 40.251(c).

98.    The Deepwater Horizon Incident was reasonably anticipated to present an imminent and substantial danger to the public health or welfare, within the meaning of TEX. NAT. RES. CODE § 40.003(12), and was therefore a discharge of a "harmful quantity" of oil.

30

99.   The Deepwater Horizon Incident caused the presence of harmful quantities of oil in Texas coastal waters or adjacent waters, and therefore caused "pollution" within the meaning of Tex. Nat. Res. Code § 40.003(21).

100.  The Deepwater Horizon Incident occurred in the waters of the Gulf of Mexico within the jurisdiction of the State of Texas, or waters contiguous thereto navigable by vessels with a capacity to carry 10,000 gallons or more of oil as fuel or cargo, and was therefore in "coastal waters" within the meaning of Tex. Nat. Res. Code § 40.003(2).

101.  The Deepwater Horizon Incident was an intentional or unintentional act or omission by which harmful quantities of oil were spilled, leaked, emitted, or dumped into or on coastal waters of Texas, or at a place adjacent to coastal waters where, unless controlled or removed, an imminent threat of pollution to coastal waters would exist, and was therefore a "discharge of oil" within the meaning of Tex. Nat. Res. Code § 40.003(8).

102.  The discharge of oil in the Deepwater Horizon Incident was not authorized by any state or federal rule, permit or order, and was therefore an "unauthorized discharge of oil" within the meaning of Tex. Nat. Res. Code § 40.003(26).

103.  By holding a leasehold interest or working interest in the Macondo Well, BP owned, operated or chartered a vessel, or owned or operated a terminal facility by lease, contract, or other form of agreement, and was therefore an "owner" or "operator"

31

within the meaning of TEX. NAT. RES. CODE § 40.003(18).

104.  By owning, owning pro hac vice, or operating the *Deepwater Horizon,* Transocean owned, operated or chartered a vessel, or owned or operated a terminal facility by lease, contract, or other form of agreement, and was therefore an "owner" or "operator" within the meaning of TEX. NAT. RES. CODE § 40.003(18).

105.  As owner of a leasehold interest or working interest in the Macondo Well, BP was an owner or operator of a vessel or terminal facility from which an unauthorized discharge of oil emanated, and was therefore a "person responsible" within the meaning of TEX. NAT. RES. CODE §§ 40.003(20)(A) and 40.251(c).

106.  As owner, owner pro hac vice, or operator of the *Deepwater Horizon,* Transocean was an owner or operator of a vessel or terminal facility from which an unauthorized discharge of oil emanated, and was therefore a "person responsible" within the meaning of TEX. NAT. RES. CODE §§ 40.003(20)(A) and 40.251(c).

107.  Each Drilling Defendant was an "other person" who caused, allowed, or permitted an unauthorized discharge of oil, and was thus a "person responsible" within the meaning of TEX. NAT. RES. CODE §§ 40.003(20)(C) and 40.251(c).

108.  As owner of a leasehold interest or working interest in the Macondo Well, Anadarko and Anadarko E&P were each an owner or operator of a vessel or terminal facility from which an unauthorized discharge of oil emanated, and were therefore a

"person responsible" within the meaning of TEX. NAT. RES. CODE §§ 40.003(20)(A) and 40.251(c).

109.  The MODU *Deepwater Horizon* with its appurtenances was a vessel "greater than 8,000 gross tons," within the meaning of TEX. NAT. RES. CODE § 40.202(a), a "terminal facility" within the meaning of TEX. NAT. RES. CODE § 40.202(b), and an "offshore drilling or production facility" within the meaning of TEX. NAT. RES. CODE § 40.202(b).

110.  Each Defendant was thus a "person responsible for an actual or threatened unauthorized discharge of oil from a terminal facility," within the meaning of TEX. NAT. RES. CODE § 40.202(b), and is thus liable for all damages other than natural resource damages from the actual or threatened discharge, in accordance with TEX. NAT. RES. CODE § 40.202(b)(2).

111.  In the alternative, treating the *Deepwater Horizon* as a vessel rather than as a terminal facility, each Defendant was a "person responsible for an actual or threatened unauthorized discharge of oil from a vessel," within the meaning of TEX. NAT. RES. CODE § 40.202(a), and is liable for all damages other than natural resource damages from the actual or threatened discharge, not to exceed an amount equal to $600 per gross ton of the vessel, and not to exceed $50 million as established under TEX. NAT. RES. CODE § 40.151(b), in accordance with TEX. NAT. RES. CODE § 40.202(a)(2).

112.  In addition, or in the alternative, the actual or threatened unauthorized discharge of oil from the Deepwater Horizon Incident was the result of gross negligence on the part of Defendants, within the meaning of TEX. NAT. RES. CODE § 40.202(c)(1). Accordingly, the Defendants are liable for the full amount of all damages. *Id.*

113.  In addition, or in the alternative, the Defendants' conduct constituted an intentional violation of state, federal, or local safety, construction, or operating standards or requirements, including the requirements of Chapter 40 of the Texas Natural Resources Code, within the meaning of TEX. NAT. RES. CODE § 40.202(c)(2), and they were thus guilty of "wilful misconduct" within the meaning of *id.* § 40.202(c)(1). Accordingly, the Defendants are liable for the full amount of all damages. *Id.*

114.  The State has incurred damages, within the meaning of TEX. NAT. RES. CODE §§ 40.003(7)(A) and 40.202, as follows:

a.   as an owner, lessee, or trustee for direct, documented loss of, injury to, or loss of use of real property or natural resources injured by the unauthorized discharge of oil, as specified in paras. 40-43, above; and

b.   for the direct, documented net loss of taxes, as specified in para. 44, above.

115.  The State has also incurred natural resource damages, within the meaning of TEX. NAT. RES. CODE §§ 40.003(7)(B) and 40.203, including the cost to assess, restore,

34

rehabilitate, or replace injured natural resources, or to mitigate further injury, and their diminution in value after such restoration, rehabilitation, replacement, or mitigation, as more fully specified in paras. 40-43 and sections IV-VI, above.

116.  The Defendants are "persons responsible for actual or threatened unauthorized discharges of oil," within the meaning of TEX. NAT. RES. CODE § 40.203(b), and are thus liable for all natural resources damages attributable to the discharge. *Id.*

117.  Since the actual or threatened unauthorized discharge of oil was the result of gross negligence or wilful misconduct or a violation of an applicable federal or state safety, construction, or operating regulation, the Defendants are liable for the full amount of all damages to natural resources, pursuant to TEX. NAT. RES. CODE § 40.203(f).

118.  In the alternative, the *Deepwater Horizon* and appurtences was a terminal facility with a capacity above 150,000 barrels, within the meaning of TEX. NAT. RES. CODE § 40.203(d)(1)(A), and the Defendants are liable for damages to natural resources not to exceed $70 per barrel or a total of $350,000,000, pursuant to TEX. NAT. RES. CODE § 40.203(d).

119.  When the amount of natural resource damages is established by the Commissioner of the GLO in conjunction with the Texas NRD Trustees, such finding will create a rebuttable presumption of the amount of such damages. See TEX. NAT. RES. CODE § 40.107(a)(1).

120.  The State should recover all its damages from the Defendants, as allowed by OSPRA.

### IX.  SIXTH CLAIM FOR RELIEF – Cost Recovery under the Texas Water Code

121.  The allegations in the preceding paragraphs are realleged and incorporated herein by reference.

122.  This action under the Texas Water Code is brought by the Attorney General at the direction of the TCEQ, pursuant to TEX. WATER CODE § 7.105(a).

123.  Each Defendant is a "person" within the meaning of TEX. WATER CODE §§ 26.001(25), 26.121, 26.265(d) and 26.266.

124.  Each Defendant was an owner, operator, demise charterer, or person in charge of a vessel or off-shore facility, within the meaning of TEX. WATER CODE § 26.266(a), and was thus a "responsible person" within the meaning of TEX. WATER CODE §§ 26.265(d)(2) and 26.266((b).

125.  The Deepwater Horizon Incident was a "discharge or spill subject to applicable federal and state requirements, and subject to the control of the federal on-scene coordinator," within the meaning of TEX. WATER CODE § 26.266(a).

126.  The State incurred costs that would have been incurred or paid by the Defendants if the Defendants had fully carried out their duties under Section 26.266 of the Texas Water Code, within the meaning of TEX. WATER CODE § 26.265(d)(2), includ-

36

ing:

     a.    reasonable costs of reasonable and necessary scientific studies to deter-mine impacts of the spill on the environment and natural resources and to deter-mine the manner in which to respond to spill impacts;

     b.    costs of attorney services;

     c.    out-of-pocket costs associated with state agency action;

     d.    reasonable costs incurred by the state in cleanup operations, including costs of personnel, equipment, and supplies and restoration of land and aquatic resources held in trust or owned by the state; and

     e.    costs of remediating injuries proximately caused by reasonable cleanup activities.

127.  The State should recover its costs from the Defendants, as allowed by TEX. WATER CODE § 26.265(d).

## X.  SEVENTH CLAIM FOR RELIEF – Civil Penalties under OSPRA

128.  The allegations in the preceding paragraphs are realleged and incorporated herein by reference.

129.  As a person responsible for an unauthorized discharge of oil, each Defendant is subject to civil penalties of not less than $250 nor more than $25,000 for each day of the discharge, or not more than $1,000 per barrel of oil discharged, as provided by TEX.

Nat. Res. Code § 40.251(c).

130.   These civil penalties are cumulative of all other applicable penalties, reme-

dies, and enforcement and liability provisions. Tex. Nat. Res. Code § 40.253.

131.   The State asks for judgment against each Defendant for civil penalties, within

the range allowed by law, for these violations of Chapter 40 of the Texas Natural

Resources Code.

## XI.  EIGHTH CLAIM FOR RELIEF – Civil Penalties under the Texas Water Code

132.   The allegations in the preceding paragraphs are realleged and incorporated

herein by reference.

133.   The oil and other substances (including the dispersant or surfactant) dis-

charged into the Gulf of Mexico constituted "waste" within the meaning of Tex. Water

Code § 26.001(6) and "industrial waste" within the meaning of Tex. Water Code

§§ 26.001(11) & 26.121(a)(1).

134.   In the alternative, the oil and dispersant discharged into the Gulf of Mexico

was "other waste" within the meaning of Tex. Water Code §§ 26.001(12) & 26.121(a)(2).

135.   The Deepwater Horizon Incident and the associated release of oil from the

*Deepwater Horizon* and its appurtenances and/or the Macondo Well, and its migration

into Texas waters, was a depositing, draining, emitting, running, seeping or other

release or disposal; or involved the causing, allowing, permitting or suffering of such

acts or omissions; and was therefore "to discharge" and a "discharge" within the meaning of TEX. WATER CODE §§ 26.001(20) & 26.121(a), respectively.

136.  The Gulf of Mexico within the territorial boundaries of Texas, and the estuaries, wetlands, marshes and coastal waters inside or bordering on the State, are "water" or "water in the state" within the meaning of TEX. WATER CODE §§ 26.001(5) & 26.121.

137.  Oil that was spilled from the *Deepwater Horizon* and its appurtenances and/or the Macondo Well flowed, drifted or migrated into Texas waters. Accordingly, the Macondo Well, and the area between the well and the territorial waters of Texas, were "adjacent to" Texas waters within the meaning of TEX. WATER CODE § 26.121.

138.  The oil and other substances released by the Deepwater Horizon Incident altered the physical, chemical or biological quality of, or caused the contamination of, water in the state and rendered the water harmful, detrimental, or injurious to humans, animal life or property, or to public health, safety or welfare, and impaired the useful-ness or the public enjoyment of the water; and therefore caused "pollution" within the meaning of TEX. WATER CODE §§ 26.001(14) & 26.121(a).

139.  Thus, by discharging oil into the Gulf of Mexico and allowing it to drift into the territorial waters of Texas, each Defendant discharged industrial waste into or adjacent to water in the State, in violation of TEX. WATER CODE § 26.121(a)(1).

39

140.   In the alternative, by these acts and omissions each Defendant discharged "other waste" into or adjacent to water in the State, which caused pollution of water in the State, without any certified water quality management plan approved by the State Soil and Water Conservation Board, or water pollution and abatement plan approved by the TCEQ, in violation of TEX. WATER CODE § 26.121(a)(2).

141.   By these acts and omissions, each Defendant caused, suffered, allowed, or permitted the discharge of a waste or the performance of an activity in violation of TEX. WATER CODE § 26.121(c).

142.   For each act of violation and each day of violation of these sections of Chapter 26 of the Texas Water Code, each Defendant is liable for a civil penalty of not less than $50 nor greater than $25,000, as provided by TEX. WATER CODE § 7.102. Each day of a continuing violation is a separate violation. *Id.*

143.   The State asks for judgment against each Defendant for civil penalties, within the range allowed by law, for these violations of Chapter 26 of the Texas Water Code.

## XII.  Attorneys' Fees and Costs

144.   The allegations in the preceding paragraphs are realleged and incorporated herein by reference.

145.   The State has incurred attorneys' fees, court costs, and investigative costs in relation to this proceeding.

146.  The State is entitled to recover its reasonable attorneys' fees, court costs, and investigative costs, as allowed by TEX. WATER CODE § 7.108.

147.  The State is also entitled to recover its costs of attorney services under TEX. WATER CODE § 26.265(d)(2)(B).

148.  The State is also entitled to recover reasonable attorneys' fees under TEX. NAT. RES. CODE § 40.255(b).

149.  The State asks for judgment against each Defendant for reasonable attorneys' fees, costs of attorney services, court costs, and investigative costs related to this proceeding.

## XIII.  Pre-judgment and Post-judgment Interest

150.  The allegations in the preceding paragraphs are realleged and incorporated herein by reference.

151.  The State asks for pre-judgment and post-judgment interest on its claims, starting on the 30th day following the date on which the claim is presented to the responsible party, and ending on the date on which the claim is paid, as allowed by 33 U.S.C. § 2705.

## PRAYER

152.  Wherefore, the State of Texas prays that:

   a.    Each Defendant be served with citation;

41

b.    Each Defendant be required to appear herein and answer this complaint within the time specified by law;

c.    The State have a declaratory judgment that all Defendants are jointly and severally liable under OPA, without limitation, for all response costs and damages resulting from the Deepwater Horizon Incident;

d.    The State have judgment against all Defendants for its economic damages and natural resource damages pursuant to OPA;

e.    The State have judgment against all Defendants for its natural resource damages and assessment costs under CERCLA;

f.    The State have declaratory judgment against all Defendants for liability for future response costs under CERCLA;

g.    The State have judgment against all Defendants for economic damages and natural resource damages pursuant to OSPRA;

h.    The State have judgment against all Defendants for its costs under Chapter 26 of the Texas Water Code;

i.    The State have judgment against each Defendant for civil penalties under Chapter 26 of the Texas Water Code, within the range allowed by law;

j.    The State have judgment against each Defendant for cumulative civil penalties under OSPRA, within the range allowed by law;

42

k.    The State recover its reasonable attorneys' fees, costs of attorney ser-

vices, court costs and investigative costs related to this proceeding;

l.    The State recover pre-judgment and post-judgment interest on its claims;

and

m.    The Court grant the State such other and further relief as the Court may

deem just and proper.

Respectfully submitted this 17th day of May 2013.

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

JOHN B. SCOTT
Deputy Attorney General for Civil
Litigation

JON NIERMANN
Assistant Attorney General
Chief, Environmental Protection Division

RONALD R. DEL VENTO
Assistant Attorney General
Chief, Bankruptcy & Collections Division

JASON A. STARKS
Assistant Attorney General
Tex. Bar No. 24046903
Bankruptcy & Collections Division

P. O. Box 12548
Austin, TX 78711-2548
Telephone: (512) 475-4867
Facsimile: (512) 482-8341
ATTORNEY FOR THE STATE OF TEXAS, ON
BEHALF OF THE TEXAS GENERAL LAND OFFICE
(ECONOMIC DAMAGES)

JANE E. ATWOOD
Assistant Attorney General
Tex. Bar No. 00796144
Jane.Atwood@TexasAttorneyGeneral.gov
ATTORNEY FOR THE STATE OF TEXAS, ON
BEHALF OF THE TEXAS NRD TRUSTEES


*J. H. Edwards*
THOMAS H. EDWARDS
Assistant Attorney General
Tex. Bar No. 06461800
Thomas.Edwards@TexasAttorneyGeneral.gov
ATTORNEY FOR THE STATE OF TEXAS

Office of the Attorney General
P. O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel: (512) 463-2012
Fax: (512) 320-0911

44